## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ASLAN KAHRAMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-26-00483-JD |
| | ) | |
| TODD BLANCHE, et al.,[1] | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

Petitioner Aslan Kahraman ("Petitioner") brings a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. [Doc. No. 1].[2] Respondents filed a Response in Opposition to the Petition for Writ of Habeas Corpus. [Doc. No. 11].[3] For the reasons stated below, the Court DENIES the Petition.

## I.   BACKGROUND

Petitioner is a native of Kazakhstan and a citizen of Turkey. On November 4, 2023, he presented himself for inspection at the Hidalgo, Texas port of entry and applied for admission to the United States. [Doc. No. 11-1 at 1]. Because he lacked a valid entry document, the Department of Homeland Security charged him as removable under 8

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Todd Blanche as Acting Attorney General for Pamela Bondi.

[2] Citations to the parties' filings use ECF designations from the top of district court filings for both page numbers and exhibit numbers.

[3] Petitioner also filed a Motion for Expedited Consideration of Petition for Writ of Habeas Corpus. [Doc. No. 12].

U.S.C. § 1182(a)(7)(A)(i)(I), and the Notice to Appear later designated him as an "arriving alien." *Id.* at 1, 4. Upon arrival, DHS paroled Petitioner into the United States under 8 U.S.C. § 1182(d)(5), commonly known as "humanitarian parole." Petitioner's I-94 authorized his presence through November 3, 2024, later extended through April 18, 2025. [Doc. No. 11-3]; [Doc. No. 11-4]; [Doc. No. 1 ¶ 32]. Petitioner then applied for asylum and withholding of removal and obtained an Employment Authorization Document. [Doc. No. 11-2]; [Doc. No. 1 ¶¶ 4, 33].

DHS released Petitioner into the interior pending removal proceedings under 8 U.S.C. § 1229a. On March 10, 2026, officers arrested him during a traffic stop and took him into immigration custody. [Doc. No. 11-5 at 2]. He is now detained at the Cimarron Correctional Facility in Cushing, Oklahoma. [Doc. No. 1 ¶ 7]. He has not been released on bond. Petitioner asserts three claims: (1) that his detention under 8 U.S.C. § 1225(b) violates the Immigration and Nationality Act because 8 U.S.C. § 1226(a) governs his custody (Claim One); (2) that his detention without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment (Claim Two); and (3) that the absence of any forum to challenge his custody violates the Suspension Clause (Claim Three). [Doc. No. 1 ¶¶ 59–74].

## II.    <u>LEGAL STANDARDS</u>

The writ of habeas corpus is available to those held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241(c)(3) gives district courts jurisdiction over challenges to the legality of an alien's detention. *Rasul v. Bush*, 542 U.S. 466, 483 (2004); *see also Soberanes v.*

*Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

III.    **ANALYSIS**

    A.    **Petitioner is an arriving alien subject to mandatory detention under 8 U.S.C. § 1225(b).**

Petitioner's detention is authorized by 8 U.S.C. § 1225(b), and his contention that § 1226(a) governs his custody fails. An "applicant for admission" includes any alien "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Parole does not alter that status because parole is not an admission: "admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer," and "[a]n alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." *Id.* § 1101(a)(13)(A), (B). The governing regulation says the same thing: "An arriving alien remains an arriving alien even if paroled pursuant to [§ 1182(d)(5)], and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2. An applicant for admission who is "not clearly and beyond a doubt entitled to be admitted . . . shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). Section 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b) does not provide for a bond hearing, and apart from parole under § 1182(d)(5), "there are no other circumstances under which aliens detained under § 1225(b) may be released." *Id.* at 300–01 (emphasis omitted).

Petitioner argues that, having been inspected, paroled, and released into the interior more than a year before his arrest, he is no longer an alien "seeking admission" and is therefore governed by the discretionary detention framework of § 1226(a), which would entitle him to a bond hearing. [Doc. No. 1 ¶¶ 60–63]. Respondents argue that Petitioner's status as an arriving alien who presented at a port of entry did not change upon parole, that § 1225 specifically governs the detention of applicants for admission, and that the general provision in § 1226 does not displace it. [Doc. No. 11 at 7–8].

Petitioner arrived at a port of entry and applied for admission; he did not effect an entry. [Doc. No. 11-1 at 1]. His parole did not change that. Parole "shall not be regarded as an admission," 8 U.S.C. § 1182(d)(5)(A), and an arriving alien "remains an arriving alien even if paroled," 8 C.F.R. § 1.2. Petitioner thus remained an "applicant for admission," 8 U.S.C. § 1225(a)(1), and an applicant for admission charged as inadmissible "shall be detained for a proceeding under section 1229a," *id.* § 1225(b)(2)(A). That is precisely Petitioner's posture: the Notice to Appear charged him as inadmissible under § 1182(a)(7)(A)(i)(I) and placed him in proceedings under § 1229a. [Doc. No. 11-1 at 1, 4].

Petitioner's reliance on § 1226(a) is therefore misplaced. Section 1226 is the general detention provision, while § 1225 specifically governs applicants for admission, and "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 375 (1990) (citation omitted). The decisions on which Petitioner relies concern

4

aliens apprehended in the interior who entered without inspection;[4] they do not address

an alien who arrived and applied for admission at a port of entry and was paroled.[5] That

distinction controls here. Because § 1225(b) supplies the only detention framework that

applies to Petitioner, and because that framework does not provide for a bond hearing, the

absence of one violates neither the statute nor settled agency practice. Accordingly,

Petitioner is properly detained as an applicant for admission under 8 U.S.C. § 1225(b),

and the Petition is denied as to Claim One.[6]

> **B.    The entry fiction forecloses Petitioner's due process claim.**

"[A]liens who arrive at ports of entry—even those paroled elsewhere in the

country for years pending removal—are 'treated' for due process purposes 'as if stopped

at the border.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)

(quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)). An alien

---

[4] Whether those decisions are correct is the subject of active appellate litigation in the Tenth Circuit. *Quiroz v. Mullin*, No. 26-6019 (10th Cir.).

[5] If anything, those decisions go against Petitioner's argument. *See, e.g.*, *Barbosa da Cunha v. Freden*, 175 F.4th 61, 75 (2d Cir. 2026) ("Instead, Section 1225(b)(2)(A) applies to those noncitizens who present themselves at a port of entry for admission, or who cross the physical border into the United States but are apprehended at the "threshold of initial entry." (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107, 140 (2020))). They further confirm that "noncitizens paroled into the country" are treated "as [if] stopped at the boundary line." *Id.* (alteration in original) (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958)).

[6] Petitioner's characterization of this as a "legal fiction," [Doc. No. 1 at 1], ignores that the law routinely "treats" or "deems" certain individuals as having a status in conflict with a commonplace understanding of that status. *See, e.g.*, 8 U.S.C. § 1225(a)(1). That is how legal fictions work.

in that position "has only those rights regarding admission that Congress has provided by statute." *Id.* at 140.

Petitioner argues that his detention without an individualized bond hearing is arbitrary and violates due process, invoking the liberty interest recognized in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and *Demore v. Kim*, 538 U.S. 510 (2003). [Doc. No. 1 ¶¶ 66–70]. Respondents argue that, as a paroled arriving alien whose parole has expired, Petitioner has no liberty interest in release and is owed only the process Congress has prescribed. [Doc. No. 11 at 9–12].

Because Petitioner arrived at a port of entry and DHS paroled him, due process treats him "as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (citation omitted). The entry fiction reaches "even those paroled . . . for years pending removal." *Id.* Petitioner thus "has only those rights regarding admission that Congress has provided by statute," *id.* at 140, and his due process claim collapses into the statutory claim resolved above. Petitioner's parole ran only through April 18, 2025, and service of the charging document independently terminated it. Upon termination, Petitioner was "restored to the status that he or she had at the time of parole"—an arriving alien. 8 C.F.R. § 212.5(e)(2); [Doc. No. 11-4]; [Doc. No. 11-1 at 1].

Nor is Petitioner's detention indefinite. Detention under § 1225(b) is "for a specified period of time . . . until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. Petitioner remains in active removal proceedings, with a hearing scheduled before an Immigration Judge. [Doc. No. 11 at 12]. He has received the process that

6

Congress prescribed, which is all that the Due Process Clause requires. The Petition is denied as to Claim Two.

### C.    Petitioner has not shown a suspension of the writ.

Petitioner's claim under the Suspension Clause fails. The Suspension Clause protects "the writ as it existed in 1789," *INS v. St. Cyr*, 533 U.S. 289, 301 (2001) (citation and internal quotation marks omitted), and it may not be invoked to "extend the writ of habeas corpus far beyond its scope 'when the Constitution was drafted and ratified,'" *Thuraissigiam*, 591 U.S. at 107 (quoting *Boumediene v. Bush*, 553 U.S. 723, 746 (2008)).

Petitioner argues that Respondents' invocation of § 1225(b) forecloses bond jurisdiction in the immigration courts and leaves him with no forum to challenge his custody, effectively suspending the writ. [Doc. No. 1 ¶¶ 71–74]. Respondents argue that the claim is conclusory and should be dismissed. [Doc. No. 11 at 13–14].

The claim assumes Petitioner has no avenue for judicial review of his detention. That assumption is wrong. Petitioner invoked the writ, and the Court has considered his Petition and ruled on the legality of his custody on the merits. That an immigration judge will not set bond once § 1225(b) is invoked does not suspend the writ. It merely channels Petitioner's challenge to the statutory basis of his detention into the very forum he has used—this Court. To treat the unavailability of an administrative bond hearing as a suspension of the writ would "extend the writ . . . far beyond its scope" at the founding. *Thuraissigiam*, 591 U.S. at 107. In any event, the bare allegation that Respondents have "extinguished the core function of the writ," [Doc. No. 1 ¶ 71], is the sort of

7

"unadorned . . . accusation" that does not state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Petition is denied as to Claim Three.

## IV.    **CONCLUSION**

For these reasons, the Court DENIES Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. [Doc. No. 1]. The Court further DENIES AS MOOT Petitioner's Motion for Expedited Consideration of Petition for Writ of Habeas Corpus. [Doc. No. 12]. A separate judgment will follow.

IT IS SO ORDERED this 3rd day of June 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE